UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL F. SONTZ,

                  Plaintiff,

v.                                       1:15-CV-0708
                                       (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                  Defendant.
_____

APPEARANCES:                            OF COUNSEL:

DeGRAFF, FOY & KUNZ, LLP           GEORGE J. SZARY, ESQ.
  Counsel for Plaintiff                NICOLE R. RODGERS, ESQ.
41 State Street
Albany, NY 12207

U.S. SOCIAL SECURITY ADMIN.        KRISTINA D. COHN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Michael F. Sontz

("Plaintiff") against the Acting Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions

for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, Plaintiff's

motion is denied and Defendant's motion is granted.

# I.     RELEVANT BACKGROUND

## A.     Factual Background

Plaintiff was born on January 23, 1965.  The highest level of education that he achieved was obtaining his Master's Degree.  His employment history consists of working as a special education teacher and football coach in the Albany School District for approximately 20 years before suffering a stroke on September 22, 2010.  Generally, his alleged disability consists of brain damage secondary to cerebral vascular accident, documented cognitive impairments and deficits, and depression.  Plaintiff's alleged disability onset date is February 1, 2012, and his date last insured is December 31, 2016.

## B.     Procedural History

On December 12, 2012, Plaintiff applied for Disability Insurance Benefits.  (Tr. 119-122.) His application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  (Tr. 101-08.)  On August 19, 2014, he appeared before the ALJ, Robert Wright.  (Tr. 43-74.)  On October 10, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (Tr. 12-30.)  On April 16, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 2-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

## C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (Tr. 17-25.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2012, his alleged onset date.  (Tr. 17.)  Second, the

ALJ found that Plaintiff had the following two severe impairments: (a) depressive disorder, and (b) cognitive disorder secondary to cerebrovascular accident. (Tr. 17-18.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix, 1. (Tr. 18.) In so doing, the ALJ considered the listings in sections 12.02, 12.04, 12.06 (the "Listings") and the criteria in Paragraphs B and C. (Tr. 18-19.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can perform unskilled work which is simple, routine, and low stress, defined as having only occasional decision making, changes in work setting, or interaction with others. (Tr. 19-23.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 23.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering his age, education, work experience, and RFC. (Tr. 24-25.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Generally, Plaintiff makes the following four arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ did not properly adhere to the treating physician rule for the following three reasons: (a) the ALJ improperly failed to give the opinion of Plaintiff's treating physician, Dr. Gary Bernardini, controlling weight despite the fact that Dr. Bernardini treated Plaintiff over several years and his opinion was based on objective medical evidence; (b) the ALJ mistakenly reported that Dr. Bernardini was a neuropsychologist when, in actuality, he is a neurologist; and (c) the ALJ improperly gave limited weight to the

opinion of another one of Plaintiff's treating physicians, Dr. Joan Gold, and replaced her expert evaluation with his own subjective evaluation of the medical data. (Dkt. No. 10, at 21-24 [Pl.'s Mem. of Law].)[1]

Second, Plaintiff argues that the ALJ failed to develop and apply the vocational expert's ("VE") testimony for the following three reasons: (a) the VE testimony was clear that there are no jobs in the national economy for someone with Plaintiff's impairments, which the ALJ ignored; (b) the ALJ failed to include all of Plaintiff's impairments in the hypothetical questions posed to the VE, including his memory deficits and concentration problems; and (c) the VE's testimony regarding available jobs in the national economy that which Plaintiff can perform was not based on substantial evidence because no evidence was provided as to the number of jobs that were actually available in the regional economy. (*Id.* at 25-28.)

Third, Plaintiff argues that the RFC is not based on substantial evidence because (a) the ALJ failed to give controlling weight to the opinions of Plaintiff's treating physicians, and (b) in determining Plaintiff's RFC, the ALJ improperly relied on his own opinion and the findings of a non-medical examiner. (*Id.* at 28-29.)

Fourth, Plaintiff argues that the ALJ failed to properly apply the special technique to determine the severity of his mental impairments because, although the ALJ made conclusions regarding the four functional areas of the special technique, he failed to cite evidence or provide any substantive analysis in support of these conclusions. (*Id.* at 29-32.) Plaintiff argues that this failure makes it impossible to determine whether his decision is based on substantial evidence. (*Id.* at 31.)

---

[1]     Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

**B.      Defendant's Arguments**

Generally, Defendant makes the following four arguments in opposition to Plaintiff's motion for judgment on the pleadings and in support of her own such motion.  First, Defendant argues that the ALJ properly evaluated the medical opinions of record for the following three reasons: (a) treatment notes showed that Plaintiff was fully oriented, could follow three-part commands, could repeat moderately complex sentences (albeit not complex sentences), and had only a mildly impaired immediate and short-term memory; (b) Psychologist, Anne Barber, Ph.D., reported that, although Plaintiff did not initiate conversation spontaneously, he had clear speech, had a euthymic mood, related adequately, and had only mildly diminished insight; (c) on the Wechsler Adult Intelligence Scale, Plaintiff achieved a full scale IQ of 110 (high average range), processing speed index of 120 (superior range), working memory index of 119 (high average range), perceptual reasoning index of 102 (average range) and a verbal comprehension index of 100 (average range), indicating an average performance or better in all domains.  (Dkt. No. 11, at 7 [Def.'s Mem. of Law].)

Furthermore, Defendant points to the treatment notes from Dr. Alan Boulos, a neurosurgeon, which indicate that Plaintiff's cognitive functioning, short-term memory, organization, and time-management skills had improved since his cerebrovascular accident and he was neurologically intact.  (*Id.* at 8.)  Treatment notes from Dr. Boulos' physician assistant also showed that Plaintiff was alert, was fully oriented and had clear and appropriate speech. (*Id.*)  In April 2011, Plaintiff told Dr. Boulos that his short-term memory and cognitive functioning had nearly returned to normal.  (*Id.*)

Defendant argues that the ALJ properly accorded great weight to the opinions of consultative examiners, Dr. Neil Berger and Dr. H. Ferrin. (*Id.* at 8-10.) With respect to Dr. Berger, Defendant argues that his opinion was consistent with his own clinical findings that Plaintiff was cooperative, related adequately, and had clear speech, coherent thoughts, intact memory, attention and concentration, average cognitive functioning, and good insight and judgment. (*Id.* at 8-9.) In addition, Defendant argues that both Dr. Berger's and Dr. Ferrin's opinions were consistent with the record medical evidence that showed Plaintiff was cooperative, related adequately, and had clear speech, coherent thoughts, intact memory, attention and concentration, average cognitive functioning, good insight and judgment, and that he had average-to-superior scores on his IQ testing. (*Id.* at 9.)

Second, Defendant argues that the ALJ's RFC was based on substantial evidence and he did not err by according little weight to the opinions of Dr. Bernardini and Dr. Gold. (*Id.* at 10-12.) More specifically, with respect to Dr. Bernardini's opinion, Defendant argues that his opinion was inconsistent with the medical evidence of record for the following six reasons: (a) his treatment notes indicate that Plaintiff was alert and fully oriented, he denied any memory problems, and he was neurologically intact; (b) he stated that Plaintiff was cooperative, and had intact recent and remote memory, attention span, concentration, and language; (c) he found that Plaintiff's speech was spontaneous and he had a normal vocabulary; (d) in November 2011, Dr. Bernardini reported that Plaintiff was doing "fairly well"; (e) in October 2011, December 2012, and June 2013, Plaintiff denied any feelings of depression; and (f) Dr. Bernardini misconstrued Dr. Barba's November 2010 evaluation notes because he claimed that Dr. Barba recorded an "inability to initiate tasks or perform tasks without outside assistance," while Dr. Barba did not record that Plaintiff had a complete inability in these areas. (*Id.* at 10.)

With respect to Dr. Gold's opinion, Defendant argues that the ALJ did not err in according it little weight for the following two reasons: (a) her opinion was based on Plaintiff's subjective complaints regarding the difficulties he experienced upon returning to work as a teacher in April 2011; and (b) her opinion that Plaintiff was completely unable to work was inconsistent with (i) her own treatment notes, which state that he had good attention while performing some computer exercises, (ii) his attention and concentration along with his ability to maintain pace and persistence were within the average range, and (iii) her report that Plaintiff's ability to relate adequately improved with treatment.  (*Id.* at 11.)

In addition, Defendant argues that the ALJ's RFC is supported by Plaintiff's wide range of activities of daily living, which include his ability to care for his personal needs, cook, drive, socialize "a lot," watch television, shop for groceries, listen to the radio, attend church, go to the movies, attend sporting events, and use the computer.  (*Id.* at 12.)

Third, Defendant argues that the ALJ properly relied on the VE testimony and the Medical-Vocational Guidelines ("the Grids") at Step Five of the sequential evaluation for the following four reasons: (a) the hypothetical questions posed to the VE were based on substantial evidence; (b) the ALJ properly rejected the VE's response to Plaintiff's hypothetical question because record evidence did not support a finding that Plaintiff had frequent problems with concentration and memory; (c) Plaintiff fails to raise any issues with the VE's suggestion that he is capable of working as a document preparer and, so long as he is capable of performing one job that exists in significant numbers in the national economy, this is sufficient to sustain Defendant's burden at Step Five; and (d) the VE was not required to provide the number of jobs available in the regional economy because he provided testimony regarding the number of jobs Plaintiff could perform in the national economy.  (*Id.* at 13-15.)

Fourth, and finally, Defendant argues that the ALJ properly applied the special technique and satisfied his obligation under 20 C.F.R. § 404.1520a(b) and (c) because he cited to specific record evidence in support of his findings and rated the degree of Plaintiff's functional limitations. (*Id.* at 16-17.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## IV.    ANALYSIS

### A.    Whether the ALJ Failed to Properly Follow the Treating Physician Rule

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 8-12 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv).  "Although the

ALJ is required to explicitly consider all of the factors, the ALJ is not required to explicitly 'address or recite' each factor in his decision." *Reyes v. Colvin*, 13-CV-4683, 2015 WL 337483, at *16 (S.D.N.Y. Jan. 26, 2015); *see also Marquez v. Colvin*, 12-CV-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor."). "If it is unclear whether the ALJ explicitly considered all of the factors, the court may search the record to assure that the treating physician rule has not been traversed, but only when the ALJ gives good enough reasons to allow the court to engage in such an inquiry." *Reyes*, 2015 WL 337483, at *16 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004]). Finally, the ALJ is also required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 [2d Cir. 1998]). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Reyes*, 2015 WL 337483, at *14.

Here, the ALJ's reasoning in his decision, along with the facts in the record, reasonably allow the Court to conclude that he considered the treating physician rule even though he did not explicitly recite each factor. (Tr. 21-23.) Furthermore, the Court finds that the ALJ gave proper weight to each medical opinion for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 11, at 8-12 [Def.'s Mem. of Law].) *See also Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (Suddaby, J.) ("[C]onflicts in evidence . . . are for the Commissioner to resolve. . . . Where, as here, the Commissioner's decision 'rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that

of the Commissioner.'") (quoting *White v. Comm'r*, 06-CV-0564, 2008 WL 3884355, at *11 [N.D.N.Y. Aug. 18, 2008]). While it is true that the ALJ misstated Dr. Bernardini's specialty as neuropsychology (rather than neurology), the Court finds this to be harmless error. Specifically, it is evident from the ALJ's decision that he considered Dr. Bernardini's treatment records and opinion. (Tr. 23.) *See also Camille v. Colvin*, 15-CV-2087, 2016 WL 3391243, at *2 n.3 (2d Cir. June 15, 2016) ("[A]n ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal quotation marks omitted). Accordingly, the Court is unpersuaded that this misstatement altered the substance of the ALJ's analysis or his ultimate conclusion. *See Volger v. Colvin*, 14-CV-1531, 2015 WL 5254397, at *5 (E.D. Mo. Sept. 9, 2015) ("Although the ALJ misstated Dr. Graven's specialty as that of neurosurgery instead of orthopaedics, it does appear that the ALJ considered Dr. Graven a specialist in the type of treatment [spinal] received by Volger. Thus, contrary to Vogler's arguments, the ALJ discussed those factors most relevant to Dr. Graven's opinion."); *Halloran v. Barnhart*, 362 F. 3d 28, 32-33, (2d Cir. 2004) (finding that, where it was unclear whether the ALJ applied the treating physician rule, the substance of the treating physician rule was applied because the ALJ considered the treating physician's opinion and its consistency with the record as a whole).

**B.     Whether the RFC Is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 6-13 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis. A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other

evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory

and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8

(W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of

the relevant evidence, including medical opinions and facts, physical and mental abilities,

non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §

404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources

and may consider opinions from other non-medical sources to show how a claimant's

impairments may affect his ability to work. 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC

determination "must be set forth with sufficient specificity to enable [the Court] to decide

whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d

582, 587 (2d Cir. 1984)

    As discussed above in Part II.A. of this Decision and Order, Plaintiff argues that the

ALJ's RFC is not supported by substantial evidence because he should have afforded controlling

weight to the opinions of his treating physicians. Plaintiff argues that, in failing to give these

opinions controlling weight, the ALJ relied almost exclusively on the findings of Dr. Ferrin, a

non-medical examiner, as well as his own non-medical judgment. (Dkt. No. 10, at 29 [Pl.'s Mem. of Law].) However, the Court finds that the ALJ's RFC is supported by substantial evidence for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 6-13 [Def.'s Mem. of Law].) Furthermore, the Court is unpersuaded by Plaintiff's argument because, as discussed above in Part IV.A. of this Decision and Order, the ALJ properly followed the treating physician rule and accorded proper weight to the opinions of Plaintiff's treating physicians. Finally, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) (D'Agostino, J.) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). The same is true with respect to the opinion of a consultative examiner, such as Dr. Berger, whose opinion the ALJ also accorded greater weight. *See Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) ("It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions. . . . Moreover, an ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence.") (collecting cases).

Accordingly, for all of the foregoing reasons, the Court finds that the ALJ's RFC was supported by substantial evidence.

### C. Whether the ALJ Failed to Develop and Apply the VE's Expert Testimony

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 13-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

#### 1. The ALJ's Hypothetical Questions to the VE Were Supported by Substantial Evidence and the ALJ Did Not Ignore the VE's Testimony

An ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where a hypothetical question is based on an ALJ's RFC analysis which is supported by substantial evidence, the hypothetical question is proper. *Calabrese*, 358 F. App'x at 276-77. The ALJ is not required to pose a hypothetical question that includes non-severe impairments. *Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983).

In the present case, the Court agrees that the hypothetical questions posed to the VE by the ALJ were supported by substantial evidence for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 11, at 13-14 [Def.'s Mem. of Law].) In addition, as discussed above in Part II.B. of this Decision and Order, the Court has found that the ALJ's RFC is supported by substantial evidence; and, because the ALJ's hypothetical questions reflected his RFC (Tr. 19-23, 64-68), the Court finds no error with respect to the content of those questions. *Calabrese*, 358 F. App'x at 277.

### 2. The ALJ Did Not Err by Failing to Make a Finding Regarding Jobs That Plaintiff Could Perform in the Regional Economy

As discussed above in Part II.A. of this Decision and Order, Plaintiff argues that the ALJ's determination that there are jobs available in significant numbers that he can perform is not supported by substantial evidence because the VE failed to provide any evidence that these jobs existed in the regional and/or local economy. However, "[a] plaintiff will be found not disabled if the ALJ determines the plaintiff can perform work that exists in the national economy *regardless* of whether work exists in the immediate area in which plaintiff lives . . . ." *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *13 (N.D.N.Y. Aug. 11, 2011) (Baxter, M.J.) (emphasis added); *see also Colon v. Comm'r*, 00-CV-0556, 2004 WL 1144059, at *8 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.) (The ALJ properly relied on VE's testimony that 100,000 jobs existed in the national economy, and claimant's contention that jobs were unavailable in his region "failed to consider the proper legal standard."); *McCusker v. Comm'r*, 13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (Sharpe, C.J.) (stating that "the regulations provide that, in determining whether work exists in the national economy, '[i]t does not matter whether . . . [w]ork exists in the immediate area in which you live.'") (quoting 20 C.F.R. § 404.1566[a][1]) (collecting cases).

Here, the VE testified that there are three un-skilled occupations available for an individual with the hypothetical profile provided by the ALJ, each of which had positions numbering in the tens of thousands available in the national economy. (Tr. 65-66.) Accordingly, the ALJ's determination was supported by substantial evidence.

**D.     Whether the ALJ Failed to Properly Apply the Special Technique to Determine the Severity of Plaintiff's Mental Impairments**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 16-17 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  The Second Circuit has explained as follows:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler*, 546 F.3d at 265-66.

Moreover, the regulations "require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision '*must* include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'" *Id.* at 266 (quoting 20 C.F.R. § 404.1520a[e][2]). "If the ALJ fails to provide specific findings regarding the degree of limitation in each of the four functional areas, then the reviewing court will be unable to determine whether 'there is substantial evidence for the ALJ's conclusion that [the Plaintiff's] impairment, while severe, was not as severe as any listed disabling condition,' and the case should be remanded." *Fait v. Astrue,* 10-CV-5407, 2012 WL 2449939, at *5 (E.D.N.Y. June 27, 2012) (alteration in original) (quoting *Kohler,* 546 F.3d at 267-88).

The Second Circuit in *Kohler* left open the possibility that an ALJ's failure to adhere to the Regulations' special technique might be harmless; however, the Second Circuit determined that the ALJ's error was not harmless because the Circuit could not "identify findings regarding the degree of Plaintiff's limitations in each of the four functional areas nor discern whether the ALJ properly considered all evidence relevant to those areas." *Kohler*, 546 F.3d at 269.

In the present case, Plaintiff argues that, "[a]lthough the hearing officer . . . recited the four functional areas of the special technique and made conclusions in each of these areas, he did not cite to a single piece of evidence nor provide any substantive analysis in support of these conclusions." (Dkt. No. 10, at 30 [Pl.'s Mem. of Law].) In support of his argument, Plaintiff cites *Benjamin v. Astrue*, 11-CV-2074, 2013 WL 271505, at *5 (E.D.N.Y. Jan. 23, 2013) (finding error where the ALJ made conclusions about severity in each of the four functional groups, but did not cite to "evidence nor provide any substantive analysis in support of these conclusions," because the ALJ was "obligated to provide specific findings justifying each of these rankings"),

and *Day v. Astrue*, 09-CV-0131, 2011 WL 1467652, at *12-13 (E.D.N.Y. Apr. 18, 2011) (noting that the ALJ "did not provide any analysis or specific findings as to each of the four functional areas"). (*Id.* at 30-31.) *See also Buford v. Comm'r*, 12-CV-5751, 2015 WL 8042210, at *16 (E.D.N.Y. Dec. 3, 2015) (stating that, "[a]lthough the ALJ enumerated and determined the severity of each of the four functional areas listed in 20 C.F.R. § 416.920a[c], he did not provide the requisite 'specific findings' required to justify his ratings as to the degree of limitation in each of the four areas"); *Dibble v. Colvin*, 15-CV-0716, 2016 WL 3647879, at *15 (N.D.N.Y. July 1, 2016) (Kahn, J.) (stating that "brief explanations and reliance on one-time consultative evaluations do not constitute adequate explanations of the four factors").

Here, the ALJ made specific findings as to the degree of limitation in each of the functional areas and gave an explanation for each of his conclusions. (Tr. 18-19.) With respect to Plaintiff's activities of daily living, the ALJ found that Plaintiff had a mild restriction because, "[w]hile the claimant has reported recent memory deficits, such that he rarely cooks for fear of leaving on the stove, he tends to his own personal care, feeds himself, dresses himself, drives, vacuums, sweeps the floor, shops with his spouse, watches television, reads, helps with childcare of two children, and uses the computer." (Tr. 18.) In support of this finding, the ALJ cited Plaintiff's function report. (*Id.*)

With regard to Plaintiff's social functioning, the ALJ found Plaintiff had moderate difficulties. (*Id.*) In support of this determination, the ALJ referenced mental status evaluations that "consistently reference intact expressive and receptive language skills, cooperative attitude, and good eye contact" in addition to Plaintiff's assertions of "good family relationships and that he socializes 'a great deal.'" (*Id.*) Furthermore, the ALJ stated that he considered Plaintiff's

"subjective reports of anxiety in the workplace, particularly when observed by others, monitored, or expected to be spontaneous or maintain a conversation." (*Id.*)

With regard to Plaintiff's concentration, persistence or pace, the ALJ found that Plaintiff had moderate difficulties. (*Id.*) In support of this determination, the ALJ explicitly referenced Plaintiff's intelligence testing, the results of which are discussed in more detail in the ALJ's RFC. (Tr. 18, 21.)

Lastly, with regard to any episodes of decompensation, the ALJ found that Plaintiff has not experienced any episodes of decompensation, and cited Dr. Berger's psychiatric evaluation. (Tr. 19.) While the ALJ's findings are somewhat brief, the Court finds that the ALJ sufficiently documented and explained the specific findings that supported his conclusions. Accordingly, unlike the decisions in *Benjamin* and *Day*, where the ALJs did not cite any evidence or provide a substantive analysis in support of their conclusions, the ALJ adequately did so here.

Plaintiff argues that the ALJ provided no "meaningful explanation" for disregarding the opinion of State agency psychological consultant, T. Bruni, Ph.D., who found Plaintiff was markedly limited in several areas. (Dkt. No. 10, at 31 [Pl.'s Mem. of Law].) However, the ALJ did explicitly discuss Dr. Bruni's opinion, as well as the treating physician opinions, in relation to his RFC determination and his reasons for affording less weight to those opinions.[2] (Tr. 23.)

---

[2] The Court is cognizant of the point of law that the discussion of evidence in other parts of a decision does not demonstrate that the ALJ considered that evidence when determining the severity of Plaintiff's mental impairments. *See Kohler*, 546 F.3d at 268 (stating that, because "the ALJ's decision discusse[d] much of the relevant evidence primarily in the context of [Plaintiff's] residual functional capacity to perform work and not in the context of the four functional areas identified by the regulations . . . it is not clear whether the ALJ adequately considered the entire record when determining the severity of [the plaintiff's] impairment . . . ."); *Benjamin*, 2013 WL 271505, at *6 (citing cases). Unlike those cases, however, Dr. Bruni's opinion was but one piece of evidence rather than the entire medical record. *See, e.g.*, *Moore v.*

Furthermore, Plaintiff's argument regarding Dr. Bruni's opinion is misplaced for the following two reasons.

First, Plaintiff cites the portion of Dr. Bruni's opinion where he found Plaintiff markedly limited in the following areas: (1) remembering and understanding detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to perform activities with a schedule; and (5) the ability to complete a normal work day and work week without interruption from psychological symptoms. (Dkt. No. 10, at 31 [Pl.'s Mem. of Law] [citing Tr. 82-83].) Notwithstanding the fact that this portion of Dr. Bruni's opinion appears relevant to his RFC determination (and not special technique), the ability to remember, understand, and carry out *detailed* instructions is not required in order to perform unskilled and simple work. 20 C.F.R. § 404.1521(b)(3); SSR 85-15. Indeed, Dr. Bruni found Plaintiff was not significantly limited in his ability to carry out and remember very short and simple instructions. (Tr. 82.)

Second, Plaintiff failed to cite the portion of Dr. Bruni's opinion where he applied the special technique. In that portion of the opinion, Dr. Bruni opined that Plaintiff (1) had moderate restriction of activities of daily living, (2) had moderate difficulties in maintaining social functioning, (3) had marked difficulties in maintaining concentration, persistence or pace, and (4) had "one or two" episodes of decompensation. (Tr. 80.) Dr. Bruni failed to discuss the specific findings he made that support these limitations; rather, he merely listed the above-noted

---

*Astrue*, 10-CV-0709, 2010 WL 4976756, at *4 (D. Conn. Dec. 2, 2010) (finding that the ALJ failed to apply the special technique because although "[t]here [was] no question that ALJ Burlison discussed the evidence of plaintiff's mental impairments in her written decision . . . this was *all discussed* in the context of the plaintiff's residual functional capacity assessment which is insufficient to meet the requirements [of] § 404.1520a and *Kohler*") (emphasis added).

limitations.  (*Id.*)  Notwithstanding this failure, Dr. Bruni's findings appear to support the ALJ's conclusion regarding the severity of Plaintiff's mental impairments.  While Dr. Bruni did find that Plaintiff had marked difficulties in maintaining concentration, persistence or pace, the ALJ's determination that these difficulties were only moderate is supported by substantial evidence for the reasons discussed above.

In any event, the Court finds that any error in failing to further explain his findings is harmless because it is clear that the ALJ would have arrived at the same conclusion regarding Plaintiff's RFC.  *See Arguinzoni v. Astrue*, 08-CV-6356, 2009 WL 1765252, at *8 (W.D.N.Y. June 22, 2009) (finding remand "not appropriate" to correct ALJ's "procedural error" in failing to properly apply the special technique because it was clear that "the ALJ would have arrived at the same conclusion . . . if he adhered to the regulations" and "the medical opinion evidence . . . supports the Commissioner's determination"); *cf. Buford*, 2015 WL 8042210, at *17 ("Based on the record, the court cannot conclude that, had the ALJ complied with the special technique, the ALJ would have arrived at the same conclusion."); *Jenkins v. Comm'r*, 769 F. Supp. 2d 157, 161 (W.D.N.Y. 2011) (stating, without finding, that, "if the ALJ's findings concerning the 'mild' nature of plaintiff's claimed mental impairments had been supported by substantial evidence in the record with respect to each of the four relevant factors, and had the ALJ discussed and explained his rationale for rejecting any contrary evidence in the record, it is possible that such error could be found harmless").  As in *Arguinzoni*, the medical opinion evidence in this case supported the ALJ's RFC.  In addition, the ALJ considered the entire record and made a determination regarding Plaintiff's RFC while considering the four functional areas central to the special technique.  (Tr. 19-23.)  *See also Arguinzoni*, 2009 WL 1765252, at *9.  The ALJ's

decision also highlighted his findings and he conducted a sufficient analysis to permit adequate review on appeal in this case.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: August 23, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge